May it please the Court, the question here is whether... Is the same question that's involved here identical to that in 1638? I know you're not counsel in 1638 but at least you're not arguing. This is the Satco case that your Honor is referring to? I believe that there's at least one identical question, which is whether the Board, having already found on the exact same record that the Chao reference includes all of what's required by Claim 1 in the 968 patent, meaning the flange constituting the claimed heat sink, the flange's heat sink having the required dimensions, and that the additional heat sink that the Board found in that other case was also just merely an unrecited element and therefore should not be included in the calculation. I believe that those issues are identical in the cases. So the question is, is there an anticipating reference that has a component that qualifies as the claimed heat sink and that meets the dimensional limitations? As I just indicated, the answer is yes, the Board already found that in the companion IPR case. In this case, however, the Board failed to analyze whether this was so. It failed to analyze whether the heat sink formed by the Trim 12, which is the spreader, and the Flange 22 meets the limitations of what's required in the claim. Just as a housekeeping question, what is the status of that other IPR in which the Board made the different claim construction and fact-finding? I'm sorry, Your Honor, what is the status of— You referred to a different IPR in which the Board made a different finding. Yes. What is the status of that? That is settled because it was not appealed. Okay. It is the same panel? It is the exact same record, and it was held in a consolidated hearing. So on the one hand, the Board finds in that other IPR exactly what's needed here, exactly the facts that are needed to anticipate— And in that other IPR, that was in the 103 context, and in this case, it's in the 102 context, right? That's right, Your Honor, but— It doesn't look like we're doing things that are in conflict with each other compared to this IPR, but over there, it's okay to rely on Cho in this manner because it's a 103, and we don't have to worry about so-called enabling prior art references in the 103 context. Is that what they said? Well, I think Your Honor's description is more generous than what the Board actually found in— I'm doing some interpreting. I think the Board literally just made reference to the fact that in the other case, it was obviousness, and in this case, it is anticipation. But that would only matter if there was an issue with enablement of our prior art reference Cho. Here, there is no enablement issue with Cho because this is a comprising claim. It can have additional unrecited elements. The Board found that the other element, number 14, was in fact an unrecited element in the other IPR, and in this case, the disclosure of Cho is completely enabled. There's not a question about it. The cases where that issue has arisen, Your Honor, is where the party challenging the patent has, in the Court's words, tried to tear the invention apart or rearrange all of the claims in order to try to squeeze it into something that makes sense. That's not an issue here, and that's why the Board's findings in this case should have matched identically with the Board's findings in the other case because all we're looking at with this question is, what does the prior art disclose? It's the same consideration. Enablement is not an issue here. As I understand the red brief's argument here, I think what they're trying to say is, when you look at the elements from Cho that you are relying on to match up with the claimed invention, you, for the heat sink claim limitation, are relying on the outer flange 22, and you're putting to the side heat sink 14 in Cho. And if you do that, then Cho wouldn't really actually accomplish the true heat sink function in the context of Cho because you would only be getting rid of some of the heat and not dissipating all of the heat by relying solely on outer flange 22. Could you speak to that argument? Certainly. So, if we look at the language of the claims, which I think is what we have to start with, it does not require that there be heat sinking completely of all heat within the device. What it claims is a heat sink that has particular characteristics, meaning that it is substantially ring-shaped and located at the outer periphery. And when you're using the height-diameter-ratio calculation, it is that heat sink. It refers to the antecedent basis of what appears earlier in the claim for which heat sink matters. The fact that there is more than one heat sink in Cho is irrelevant to the court's analysis because, for one thing, the claim begins, it's an apparatus claim, and it claims a luminaire comprising. And as this court has held, that means that there may be additional elements. So the operability, the functionality, is not at issue. And I would further add that the claim itself says nothing about particular performance, such as how much heat has to be dissipated. Both the board itself found that there is more than one heat sink, and we don't disagree with that, and the reference itself refers to more than one heat sink. It has the different elements. It says that the heat sink on which we're relying, the outer flange 22, actually dissipates the majority of the heat. It continues, and I can give references, if the court would like, to where it refers to these as separate elements. It does this in numerous instances. And I would also add that the appellees have acknowledged that the heat sink at issue does not have to dissipate all of the heat. Your honors may recall this phrase in their brief. Heat sink 14, which is this unrecited element on which they are relying entirely to defeat anticipation, is a heat sink under any definition. And of course, the reference itself says that that element dissipates no more than 35% of the heat. And that element is in the can itself, right? That's correct. That's correct, your honor. And the heat sink that matters for purposes of the calculation is the heat sink that is the outer flange. And as Chau describes it, that is outside of the housing. Chau says that that's also something that, I think it says 37% of the heat goes through that, or am I mis... I believe it's the other way around, your honor. What Chau says is that 65% of the heat, obviously the majority of the heat, is dissipated through the heat sink on which we're relying. Through the outer flange 22. The outer flange 22. And that is the heat sink, and that is the only heat sink that meets the other required limitations for this particular claim that we're focusing on. Because that is the only heat sink that is ring-shaped and located at the outer periphery. So if Chau also disclosed a third heat sink, a fourth heat sink, you'd say it doesn't matter. Because all that matters is they have, Chau has a heat sink that conforms to the requirements of this claim. If the, whatever, circular shape disposed around the heat spreader and all that. I think that's right, your honor. I mean, we are, here we are dealing with only two heat sinks. And if Chau had a second or third heat spreader, you would say, that's fine, it doesn't matter. Because those are extra components in the Chau contraption that are not being relied on for purposes of anticipation. Where you have a comprising claim, and you have the limitations, as we do in Chau, meeting what's required by that claim. Then the addition of other elements is not relevant to the court's analysis. That is, of course, what the board itself found precisely in the companion case. If we were to agree with you, we'd have to send the case back. Well, your honor, we believe that on this particular point, meaning that it has already been established, that the heat sink of claim one is met by Chau's flange 22, that should result in a reversal. We understand that because... With respect to all of the claims, or just some of them? Well, with respect to all of the claims, your honor, because the board found, as its conclusion, only this one issue that we believe has been firmly established was correct in the other opinion. There are other limitations and other claims which they'd have to consider? That's right, your honor. And which claims have additional limitations that the board would have to consider? These are all dependent claims, and so that would be claims 3, 4, 6 through 8, 12, and 16. We did argue anticipation as to claim two, so we think that would... So the other claims would have to go back on the other limitations? Yes, once the court reversed on this point. We don't think that having the board already decide this factual issue correctly, and the only way that's supported by the record, that the board needs to or should go back and review that. We think the record establishes what the correct decision is, and that the board actually reached that precise decision in the other case. So claim two would be a total reversal? The claim is gone, and then the board would have to reconsider claims 3, 4, 6 to 8? 6, 7, 8, 12, and 16. Are those it? Is that the list? That's correct, your honor. Okay, you want to save the rest of your time? I will. Thank you, your honor. Mr. Neruzzi again? Yes, your honor. Thank you, and may it please the court, again... Just so that we don't lose track of this point, do you agree that if the petition were to prevail on this point, that we would reverse on claim two and remand this to the others? No, your honor, I don't. You don't? The argument that they have in their brief is as to claim one. Claim two still has an additional limitation, and there were other arguments presented as to claim two. That's at appendix 294. And then I certainly do agree that with respect to claims 3, 4, 6, 7, 8, 12, and 16, at a minimum, there would have to be a remand because there are also separate arguments as to those limitations. Did you say 8294? Yes, your honor. Okay. Okay, go ahead. I would like to demonstrate to you why no reversal or remand is warranted at all here, particularly because the board's decision is a core, absolute fact finding. The question of anticipation from the perspective of whether... What's the fact finding? The fact finding is, what is the heat sink in Chu? That's the fact finding. There is a requirement of a heat sink. The question is, what is that heat sink? And the board had this issue teed up to it very precisely by both sides. Where does the board make this fact finding you're talking about? At appendix 19, your honor. At appendix 19? I mean, the entire finding... What about where is it? Show us where. Sure, let me make sure. Appendix 17. The statement is, in this case, the arrangement of heat sinking elements... At the bottom of A17? It is about the middle, your honor. In this case, the arrangement of heat sinking elements disclosed in Chu includes both trim 12 and heat sink 14. And if you look at appendix 16, the board identifies what the issue is. They say, we need to address only a single argument to determine whether Chu anticipates claim one. Pat, the owner, argues that Chu does not disclose the height and depth limitation recited in claim one because one of ordinary steel in the art would have understood that the heat sink of Chu would encompass both the trim 12 and the heat sink 14. And this is the core fact finding issue that was before the board. What is the heat sink? Isn't there also a claim construction issue? Which is, you know, in looking at this claim, is it some way mandating that there's only one heat sink? Your honor, I don't think that that's a claim construction issue. There is no claim construction issue as to the fact that the claim requires a heat sink. Yeah, it requires a heat sink. And the particular heat sink it requires, it forms an annular ring, right? Well, that is a further separate requirement of the claim. And so I just want to touch on that for a minute. Let's assume for the moment that Chu did not have the ring at all. And it only had a bigger version of heat sink 14 for the moment. We would all agree that Chu has a heat sink. It would meet the requirement. If it's a substantial enough heat sink that it does the job of the heat sink and it enables the reference, it would be a heat sink. But it would not be the heat sink of the rest of the claim limitations because there are further requirements on that. I agree with that. That's correct. What does that get you? Well, that gets me very far, your honor, which is that the issue of what should we consider as the heat sink is not answered by whether it's a ring or whether it has certain dimensions. Those are additional. These are identified as separate elements in Chu or Chao or whatever. Your honor, they have separate names and labels on them, but they are one heat sink together, and that's the finding of the claim. And I guess that's my question.  One being outer flange 22 and the second one being heat sink 14. And I'd like to address – They both dissipate heat, right? That's emanating from the light source that comes through the heat spreader. And outer flange 22 we know dissipates 65% of the heat, and then the remaining 35% of the heat is dissipated by heat sink 14. So why is it wrong for me to think Chu is talking about two heat sinks instead of it has to all be considered and deemed to be a single heat sink? I'll answer that at two levels, your honor. And the first one is one that I'm always reluctant to say. I'm waiting. Just say it. Okay. The first is you are fully entitled to that opinion, Judge Chen, as is everyone on this panel and anyone in the room, and I will address based on the reference why I think it's factually incorrect based on what Chu itself teaches. But we can all have differences of opinion of what the prior art teaches. Substantial evidence tells us that if two inconsistent conclusions can be drawn, the board's conclusion cannot be reversed on that basis. Now I'd like to talk about why, in fact, the board's decision is not only supported by substantial evidence but correct. If we turn to Chu itself and we go to Appendix 703 at column 5, line 8, we'll find what page? 703. Yeah. Column 5, line 8. And really I can jump you to line 15. Actually, sorry, I'm starting at line 12. It says, in this configuration, heat energy flows from the light source into trim 12, where a portion of the heat energy is dissipated from heat 12, and that's referring to what you said, Judge Chen, about a percentage of it. Heat energy remaining in trim 12 is transferred into heat sink 14. As such, heat sink 14 may be regarded as acting as a heat sink for trim 12. And the point here is they're acting as one unified system of heat sinking. Actually, what about the language above that, though, where it says although some heat is vented into the recessed housing via heat sink 14, a majority of the heat is dissipated from the trim 12? I mean, all of this, to me, rather clearly suggests by having two different reference elements, two different numbers for these, they're not considered the same element. Well, Your Honor, that was the finding of the board, and that was the exact issue before the board. I know, and the question is whether a reasonable fact finder could find that way, if you look at it as that as opposed to a claim construction question. Absolutely, Your Honor, and I do think so. And I think so because there was abundant evidence from LSG's expert, Dr. Brett Schneider, who is an undisputed and well-renowned expert in this field, who explained that if you only consider the trim 12 or specifically the outer flange 22, then you are going to have inadequate heat dissipation for the product to operate, and that's where we run into the enablement problem. But they're not taking out the other heat sink. They're just saying that in order to map this onto the claim, you ask whether there is a heat sink that has this characteristic. There's nothing in a comprising claim that says you can't have something else. And I agree with that, except I don't think that it takes them where they need to go, and here's why, Your Honor. What they need to identify as the heat sink has to be something that is adequate to enable. That's the problem. So if there were two heat sinks and one was a failsafe— Can you slow down? Yes. I want to explore a little bit the premise of your argument that what they are relying on needs to be enabling. I mean, I'm not sure what you mean, and I'm not sure where your authority lies. Okay, let me break it down in the following way. Let's assume that the heat sink that we're considering is a radiated fin sort of heat sink in the prior art, which is a common thing. They're circular, they have a bunch of radiating fins, and in fact this reference itself, Chu teaches that for the reference 14, for the element 14. Each of those radiated fins dissipates heat. Could we point to one of those and say that is the heat sink? This is the fundamental question that we're grappling with. How finely can we slice and dice the thing to— Each individual fin is not identified as a separate element. And that's not the conclusion that we can rely on, because at the end of the day the question is what is the structure in the prior art that is adequately dissipating heat to enable that prior art reference for what it is and for what it needs to be to meet the claims so that we can call that the heat sink? And this is how we reconcile— Do you have any cases to support this theory? Yes, Your Honor. For example, the Henry Moussa case that was cited below by the board requires that the reference be enabled to anticipate. That's a different kind of question than I think what we're talking about here. In that Moussa case, we were talking about, as a purported prior art reference, some kind of press release that was extremely skeletal in what it was describing. And there was therefore an argument over, well, looking at that skeletal press release, would one of skill and the art really know how to make this particular invention? And so that was the debate. Here, there's no debate that I'm aware of that Cho, if reading Cho, one wouldn't be enabled on how to make the device being disclosed in Cho. What I think you're trying to do is say, well, just those particular pieces that the petitioner is relying on to match up and map onto the claimed invention, those individual subset of pieces of the Cho contraption itself has to be enabling. And I don't think that's what Moussa stands for, and I don't know any case law that stands for that when it comes to an anticipation analysis. I think, Your Honor, that the requirement that the anticipatory reference be enabled for what it is being relied upon to meet the claim limitations is the case law that supports our position. And I'd like to demonstrate it in the following way. I know this is not the exact facts, and I'm going to come back to the exact facts, but I want to start with a hypothetical. Suppose that the outer flange only dissipated 3% of the heat, not 65%, right? And it's still a separate element called outer flange 22. If we were evaluating whether that's an adequate heat sink to be all by itself the heat sink, we would have a problem there because it's only dissipating 3%. That's not enough heat to be the heat sink. Here's my concern. If this claim said a heat sink that sinks all of the heat, that dissipates all of the heat for this luminaire, now what you're talking about would be highly relevant, but that's not what the claim says. The claim says a heat sink. And what is a heat sink? A heat sink is some kind of device that dissipates heat, period. Now the next question, therefore, is, well, how about outer flange 22? Is that a device that dissipates heat? Yes, everybody knows that. Everybody agrees with that. The reference itself says it dissipates 65% of the heat that's being produced by the LEDs. So this is the concern I have with the argument you're making. And I understand your concern, Your Honor, and I think that it was fully vetted and addressed and debated below based on the facts. And I'd like to point you specifically on this point to Appendix 1141, which is paragraph 41 of Dr. Bretschneider's declaration. And what he explains there is, notwithstanding the 65% heat dissipation assumption of outer flange 22, if we remove consideration of heat sink 14 as part of the overall heat sink system of CHU, what we end up with is an operating temperature that goes above the operating limit of the product, leaving the product not enabled. And now we come to the 103 issue that we had in the other IPR proceeding, where the board found that CHU is adequate based on flange 22. Again, it sounds like Dr. Bretschneider, his statement, is premised on the view that whatever we're going to refer to in CHU as the claimed heat sink has to accomplish all of the heat sinking of the luminaire in CHU, or at least a sufficient amount of it such that the CHU luminaire works for its intended purpose. And that is starting to load in a lot of expectations and restrictions on the claimed heat sink that I don't see in the claim for the claimed heat sink. Your Honor, it is in the claim for the claimed heat sink, and I think that's the best point on which to focus this discussion ultimately. What we have is an invention that is designed toward bringing down the dimensions of this type of a product and making it so that it's more compact and more low profile. CHU has a great big heat sink. It's the old way of doing things. To take CHU and figure out a way to bring those dimensions down requires technical innovation. That's what this patent is about. Isn't that second heat sink in CHU, element 14, it's in the can, right? It does go into the can, Your Honor. So it's not really part of the profile that extends out of the can? I'm referring, no, that is correct, but I'm referring to the design that you see in the figure such as figure 12. The design in the figures is low profile, not only from the perspective of what comes outside, but also what goes into the can. Because there are situations where not all of the cans can accommodate that type of depth and where it's not technically advantageous to have such a large heat sink. And so what they want to do is they want to ignore the existence of the heat sink by not reading the claim onto it with respect to CHU. And I understand that. I'm very familiar with it. Thank you. I think Mr. Nusser, we're out of time. Yes, Your Honor. Thank you. Ms. Hartman. Thank you. Your Honors, I think I can be very brief on this because the court appears to already be recognizing that the claims at issue here do not require heat dissipation occurring solely through a single heat dissipation structure. And with the comprising language in the preamble, that makes heat sink 14 unrecited. The court asked about particular aspects of CHU's specification that show that there is more than one heat sink. I would like to actually take a step back and indicate that the board's decision itself also recognizes that in this case, of course we know in the other case, and I only recognize this, they found it for its decision that CHU has more than one heat sink. But even in this case, the board found that trim 12 and heat sink 14 are separate elements with separately enumerated labels. Where are you in the board decision? This is appendix 17, Your Honor. And what the board and my colleague for Appalese referred to this as well. What the board found was in this case, the arrangement of heat sinking elements disclosed in CHU includes both trim 12 and heat sink 14. It then seemed to have overlooked what that means, but the point of CHU having more than one heat sink is in not only what Judge Stoll cited, which is talking about how heat is dissipated majorly by the flange 22, and that is 65% of the heat, but also CHU goes on to say that trim 12 and flange generally dissipate more heat from the light source than heat sink 14, so it's actually setting up the comparison of its two different heat sinks. We think there's no question, but there's more than one heat sink in CHU. We think the board referred to that in its decision, but then took it to the wrong decision. And to answer Judge Stoll's question about claim construction, we didn't think it was a claim construction issue at the beginning because the language of the claim was so clear as to what the heat sink that gets included in the required limitations must be. But we do believe that the appellees making this a question about whether that heat sink is a heat sink system or whether it has to heat sink all of the heat coming off the structures could be considered a claim construction issue by this court. Okay. Anything more? No, Your Honor. Okay. Thank you. Thank both counsel. The case is submitted.